1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHENDN DISTRICT OF CALIFORNIA

7

8    ALBERT SANDOVAL,                                   No. C 10-01066 SI

9                Plaintiff,                             **ORDER GRANTING DEFENDANT
                                                       QWEST'S MOTION FOR SUMMARY**
10        v.                                            **JUDGMENT**

11   ZILLIONTV CORPORATION, ET AL.,

12              Defendants.
                                              /
13

14        On December 9, 2010, the Court heard argument on the motion for summary judgment filed by

15   defendant Qwest Communication International, Inc. ("QCII").  Pro se plaintiff Albert Sandoval did not

16   appear at the hearing or otherwise file papers responding to defendant QCII's motion.[1]  Having

17   considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendant

18   QCII's motion for summary judgment.

19

20                                        **BACKGROUND**

21        Pro se plaintiff Albert Sandoval alleges willful copyright infringement, contributory copyright

22   infringement, and vicarious copyright infringement against defendants ZillionTV Corp., Sierra Ventures

23   Associates IX, L.P., Sierra Ventures IX, L.P., Sierra Ventures X, L.P., Mitchell Berman, David Charles

24

25        [1]   On October 27, 2010, defendant QCII served notice of its motion to plaintiff by first class
     mail, sent to the only address listed for plaintiff on the district court docket. Doc. 39-7.  Additionally,
26   days before the hearing the court clerk left plaintiff a voice mail message at the phone number listed on
     the docket to inform him of the hearing and received a voice mail message in return acknowledging the
27   voice mail (though denying previously being aware of defendant QCII's motion or the hearing date).
     The court clerk left a subsequent voice mail informing plaintiff that the Court would contact him by
28   phone during the hearing.  The Court attempted to contact plaintiff by phone during the hearing but was
     not able to reach him.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1 Schwab, Jack Lawrence, Elizabeth Seidner Davidoff, and Qwest Communications International, Inc.

2 Compl. at 1. The allegations stem out of ZillionTV's use of images created by plaintiff after ZillionTV

3 and Energi, Inc.—of which plaintiff is president—entered into an independent contractor agreement,

4 signed by plaintiff on behalf of Energi. Compl. ¶¶ 3–7.

5        Plaintiff alleges that Qwest Communications International, Inc. ("QCII") is "one of ZillionTV's

6 lead investors and board members as well as an exclusive distributor of ZillionTV's set-top box

7 product." Compl. ¶ 15. QCII has introduced evidence that Qwest Communications ("QC")—a wholly

8 owned subsidiary of QCII—is the entity that in fact entered into a distribution agreement with

9 ZillionTV. Ochoa Decl. ¶ 3. According to QCII, QCII was not a party to the distribution agreement,

10 had no involvement in QC's dealings with ZillionTV, and never generated any revenue or realized any

11 profit with respect to the ZillionTV Service. Poll Decl. ¶ 3. Rather, it was QC that invested

12 approximately $10 million in ZillionTV in exchange for 10% of ZillionTV's then-outstanding stock and

13 one of the five seats on ZillionTV's Board of Directors. Id. ¶¶ 4–5.

14        ZillionTV has filed a lawsuit in the Superior Court of Santa Clara County against plaintiff for

15 breach of contract, conversion, and defamation. Compl. ¶ 8; *Zilliontv Corp. v. Energi, Inc.*, Case No.

16 1-10-CV-161119 (Cal. Super. Ct.), Docket ("Super. Ct. Docket"). QCII is a cross-defendant in that

17 case. At the hearing, counsel for defendant QCII stated that there is some overlap between plaintiff's

18 state-court and federal-court claims. Defendant QCII has filed a motion for summary judgment that is

19 pending in the state court case.

20

21                                      **LEGAL STANDARD**

22        Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and

23 any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

24 to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).[2] The moving party bears the initial burden

25

26      [2]    This motion was filed before the most recent revision of Rule 56 went into effect, but
argued after. The rule change impacts only procedural matters that would not be relevant to this case.
27 The standard for granting summary judgment has not changed. As the Committee notes on the recent
amendment state:
28     Rule 56 is revised to improve the procedures for presenting and deciding

**United States District Court**
For the Northern District of California

1    of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

2    323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving

3    party will have the burden of proof at trial. The moving party need only demonstrate to the Court that

4    there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

5           Once the moving party has met its burden, the burden shifts to the non-moving party to "set out

6    'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry

7    this burden, the non-moving party must "do more than simply show that there is some metaphysical

8    doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

9    586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be

10   evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty*

11   *Lobby, Inc.*, 477 U.S. 242, 252 (1986).

12          In deciding a summary judgment motion, the court must view the evidence in the light most

13   favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

14   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from

15   the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*.

16   However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

17   genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d

18   730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(e)

19   (now Rule 56(c)(2)).

20          A district court has no "obligation to give notice of Rule 56's evidentiary standards" to "pro se

21   litigants in the ordinary civil case." *Jacobsen v. Filler*, 790 F.2d 1362, 1365, 1364 (9th Cir.1986).

22   However, a district court may not grant summary judgment in favor of a party whose moving papers are

23   insufficient to support it, even if the other party did not file any materials in opposition. *Martinez v.*

24   *Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003); *see also Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950

25

26          summary-judgment motions and to make the procedures more consistent with those
            already used in many courts. The standard for granting summary judgment remains
27          unchanged. The language of subdivision (a) continues to require that there be no
            genuine dispute as to any material fact and that the movant be entitled to judgment as
28          a matter of law. The amendments will not affect continuing development of the
            decisional law construing and applying these phrases.

1  (9th Cir.1993) ("The party opposing the motion is under no obligation to offer affidavits or any other

2  materials in support of its opposition.  Summary judgment may be resisted and must be denied on no

3  other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable

4  issues.").

5

6                                              **DISCUSSION**

7         Defendant QCII argues that plaintiff sued the wrong corporate entity.  QCII has presented

8  evidence that it did not invest in ZillionTV or hold a seat on its board, had no involvement with QC's

9  dealings with ZillionTV, did not have a contractual relationship with ZillionTV or with plaintiff or

10 Energi, and did not have an employment relationship with plaintiff or Energi.  Poll Decl. ¶ 5; Roberts

11 Decl. ¶ 3; Duran Decl. ¶¶ 3–4.  QCII is a holding company, and it was QC, a wholly owned subsidiary,

12 that was the ZillionTV investor and hypothetically could be liable for plaintiff's copyright claims.  *See*

13 Roberts Decl. ¶ 3; Ochoa Decl. (discussing QC's relationship with ZillionTV); Poll Decl. (same).

14        In order to hold QCII liable, plaintiff will need to prove (1) that QCII is directly liable or (2) that

15 QC is directly liable *and* that QCII is liable for QC's conduct.

16        To establish that defendant QCII is directly liable for direct infringement, plaintiff must prove

17 that defendant QCII copied constituent elements of the work that are original.  *Feist Publ'ns, Inc. v.*

18 *Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  To establish contributory infringement, plaintiff

19 must show that defendant QCII "intentionally induc[ed] or encourag[ed] direct infringement."

20 *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 930 (2005).  To establish vicarious

21 infringement, plaintiff must show that defendant QCII "profit[ed] from direct infringement while

22 declining to exercise a right to stop or limit it."  *Id.*  There is no evidence on the record that would

23 support a finding that QCII is directly liable on any of these claims.

24        In order to prove that QCII is liable for QC's conduct, plaintiff will need to pierce QC's

25 corporate veil.  This requires more than a showing that QC is wholly owned by QCII.  *M/V Am. Queen*

26 *v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1489–90 (9th Cir. 1983).  Rather, plaintiff must

27 show that QCII is the alter ego of QC or that observation of the fiction of separate existence would,

28 under the circumstances, sanction a fraud or promote injustice.  *See id.*; Ballantine & Sterling: Cal.

4

**United States District Court**
For the Northern District of California

Corp. Laws 14-51 at § 296.02 (R. Bradbury Clerk ed., Matthew Bender & Co. 4th ed. 2008) (discussing California law); Welch, Turezyn & Saunders, Folk on the Delaware General Corporation Law: Fundamentals 985–86 at § 329.3 (2010 ed.) (discussing Delaware law).  There is no evidence on the record that would support a fraud or alter ego theory.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant QCII's motion for summary judgment.  Doc. 39.

**IT IS SO ORDERED.**

Dated:  December 17, 2010

SUSAN ILLSTON
United States District Judge